Good morning, Your Honors. Good morning. Stephen Shakin appearing for the appellant. I was almost going to say petitioner. That's usually what I come before you with. This case actually is very, very narrow. It comes before you in the posture of an appeal from a grant and denial of cross motions for summary judgment. But truthfully, there's absolutely no dispute about the facts. In fact, there really isn't much dispute about the law except this one point, and it deals with retroactivity under St. Cyr. Now, it's a little confusing because retroactivity comes up in two strands. The first is retroactivity of the definition of an aggravated felony. St. Cyr didn't deal with the naturalization proceeding. No, it did not deal with naturalization. It dealt with the state of mind, what would be reasonable for a non-citizen to believe about immigration consequences when they are pleading to a crime. And I realize that in St. Cyr, they just assumed that there would have been some discussion. It was never. It was not reasonable for him to at least believe the possibility that if he wanted to become a citizen, that his issue of good moral character would possibly be affected by his committal conviction. Well, more or less, yes, because at the time that he entered his plea, and we're looking through the prism of St. Cyr, at the time he entered his plea, the offense was not even an aggravated felony. Now, I understand. It still would bear upon the issue of good moral character in any event, right? You could be at a naturalization proceeding, it could be a determination that somebody does not possess good moral character, even if he hasn't been convicted of a crime, correct? Well, it's not quite that broad. They would have to show initially, if they wanted to have a mandatory bar, they would have to show that within the five years preceding the application being filed, he was not a person of good moral character. If they wanted to use discretion, they would have to take matters outside the five years. They would have to be very specific. What would be his reasonable expectation? I mean, he's not aware of five-year bars for this type of technicality or that type of technicality. He knows his moral character would be questioned, I assume, with reason to assume that if he wanted to become a citizen, he would have this issue. However, it would be structured in terms of five-year periods or whatever. I mean, it would be an irrelevancy in terms of his mindset. Well, it's not irrelevant because in St. Cyr, there was never the court, the Supreme Court never said you have a guarantee that you will prevail in a 212C application. That only dealt with deportation. Did that deal with you becoming a citizen of the United States? Well, it also deals with admissibility also, which was not mentioned in the statute. So I believe an attorney, a reasonable attorney, if we take the hypothetical from St. Cyr, that advice would or should have been given, an attorney at the time would never have told the individual, Mr. Alicosi, the appellant, that you are going to face a permanent bar to naturalization because of an aggravated felony, because it wasn't an aggravated felony. Well, in St. Cyr, the Supreme Court cites all kinds of material supporting its idea that it would be reasonable for a person to have a settled expectation that notwithstanding what had gone on, 212C still might be available. I mean, you've read the case. Yes. There can be little doubt that as a general matter, alien defendants, considering whether to enter into a plea agreement, are acutely aware of the immigration consequences of their conviction. Then they cite Magana Pisano, an alien charged with a crime, would factor the immigration consequences. Then they cite Bender and the national defense lawyers and all this thing in connection with 212C. But there's nothing in this record that you've given to us that supports that all of this would apply to a naturalization proceeding. No. I can't see how anybody, among other things, apparently your client didn't bother to register as a sex offender, was convicted of a crime of failing to register as a sex offender. Is that right? That's correct. He was also convicted of a DUI. That's correct. So why didn't he register as a sex offender? I mean, you can't answer that. But, I mean, this is what we're dealing with. A guy who is, it's not the same as St. Cyr with 212C. He's now applying, and you've read Bereni. Bereni says it's a completely different proposition. The district court said, I don't see how a person in his situation could have had any settled expectation that this wouldn't affect his ability to be, his moral character. And this seems to be on a completely different footing from St. Cyr. Okay, well, you raise several very interesting points. The first one I'll answer is, what would be the settled expectation? The settled expectation is, in St. Cyr and in any waiver case, is never that you will be guaranteed a positive result, that you will be eligible. So the question is not – Eligible for relief from being thrown out of the country. Well – Bereni says this is as different as chalk is from cheese. Naturalization compared to whether you're going to be ejected. Well, naturalization is different than deportation. So is admissibility. They're totally different concepts. As we know, the rules governing admissibility are quite different than the rules governing, well, now removal, then deportation. Yet the courts found that 212C could be used to waive both. So the question really is, and it's a narrow question, whether or not it would have been reasonable to believe that a waiver granted under 212C would waive all immigration consequences or only some. I don't understand the way you're using the word waiver. You know, waiver is a word that gets thrown around without much thought. But if you look at what the United States Supreme Court tells us, a waiver is the knowing and voluntary abandonment of a right. How did the government waive this? I won't use the word waiver because – Well, you didn't use forfeiture or estoppel either. I mean, you used waiver. Waiver does not fit, does it? Well, the reason I use waiver is because 212C, as a relief, waives the use by the government of certain convictions to invoke certain immigration consequences. It's a relief from the immigration consequences. So perhaps another way of saying it would be, would an alien who pled guilty under these – at this time, because there's something unique, he pled before there was any advice from any source whatsoever. No one had weighed in on this until 1993, and then the first court decision was in 2006, the first circuit court decision. So the question is, would it be reasonable to believe that the relief that you were afforded under 212C would apply not only to deportation and denial of admission, but also you could not – would not invoke the permanent bar to naturalization as aggravated felon. Now, I think we can agree, hopefully everyone would agree, the government too, that at the time no one would have been able to tell him this is a permanent bar to naturalization because at the time it was not an aggravated felony. But you still had to demonstrate good moral character. You have to do that in every – He would be able to say, notwithstanding that you've been charged with rape, pleaded guilty to assault with intent to commit rape, and you're a registered sex offender, that that's not going to impair that part of the equation. Well, the question is to whether or not after a certain period of time you would still be found to be a person lacking good moral character. That's all – Is he still a registered sex offender? Well, yes, he is. But that was oddly – that was not ever raised. The sole reason for the denial – I realize that, but it has to do with settled expectations. A person in your client's shoes at that time, surrounded by all of these consequences, would it be reasonable for that person to have a settled expectation that somehow this wouldn't affect his moral character in connection with applying for naturalization as a citizen? At the time, I was actually practicing at the time. I would have advised the client, of course, that any conviction involving moral character is going to have to be addressed at the time of naturalization. There are ways of addressing that. That's what we do when we have naturalization applications that aren't plain vanilla. Ever gotten a registered sex offender through? I'm trying to remember if they were registered sex offenders. They're people who have been convicted of sex offenses. I can't remember off the top of my head whether they were registered sex offenders. That's a statutory provision that attaches to some offenses and not to others. But definitely there's no statutory bar. If it's not an aggravated felony after November 29, 1990, there is not a statutory bar to people getting naturalization. You would have to persuade now the CIS, then the INS, that the passage of time had ameliorated the fact that, you know, had it really rated any consequences, that lawyers do that all the time and CIS weighs these things all the time. So I don't think at the time, yes, it would have been improper to say this could never come up at all. But the question is a permanent bar. In other words, he was not told and could not have been told it was a permanent bar. So the question really is if you pled guilty in that time frame before there was any evidence, any statements or any authority that would cause a lawyer to say you're going to never be able to get naturalized. Not that, you know, if you stay out of trouble and you get a competent attorney, they may be able very well to persuade the government that you are now worthy of naturalization. That's why they made the permanent bar, because they didn't want people to get naturalized prior to that you could be naturalized. In the 1993 document, which nobody was able to find but everybody seems to agree existed, was a statement by the chief counsel of the then INS saying that these people should not be allowed to be naturalized, which there is an inference that could be drawn that people were getting naturalized in the very same situation as Appellant. That, Your Honor, I would just like to save a little bit of time for rebuttal unless the Court has more questions for me. It appears not. Thank you. Thank you. Good morning. May it please the Court. My name is Audrey Hemesath on behalf of the Respondents in this matter. This case is on all fours with the Chan v. Gardner decision out of the Second Circuit, and we urge the Court to follow the reasoning in that court. A lot of time was just spent discussing settled expectations, and I agree with the direction the Court seemed to be heading on that. But I don't think it's a necessary analysis here. In St. Cyr itself, the Court almost as an aside refers to the section of ARERA 321B, which is the definitional statute at issue in this case, and holds that that portion of the ARERA statute is clearly unambiguous. That means that this Court doesn't need to go into that retroactivity analysis about settled expectations. If Congress made that part of the statute clearly unambiguous and the Ninth Circuit case law as well says that the definitional expansion is clearly unambiguous, then there isn't a retroactivity analysis that needs to follow. All you have to do is match up the timeline of this case. At the time he pleaded guilty, there was an aggravated felony bar in place to a finding of good moral character. Then ARERA came along and expanded the definitions of aggravated felony. He fell into that expansion, and there is no impermissible retroactive effect in that because the statute is clearly unambiguous. That's really it. Kennedy. Well, if we were to conclude that it would be appropriate for somebody in his circumstance to have a settled expectation, as in St. Cyr, that notwithstanding what had just happened, he could apply for naturalization, wouldn't that cause problems with the analysis that you just gave us? No, it wouldn't. And I believe that's from this Court's case of Becker. No due process rights are upset when Congress considers the potential unfairness of retroactive application and determines that it is an acceptable price to pay for the countervailing benefits. So the idea here is to draw in a bigger pool of criminal aliens. But in St. Cyr, had they said about the problem that they're dealing with as well, then the whole settled expectation thing would have been irrelevant. It would be a different case. It would be a different case, right. The issue there was, is there a required retroactivity analysis because the statute wasn't clear. How else did they ambiguously say there was, and they compared it to the situation you're in? And they compared it to this situation. Here's a situation where they did state clearly. Exactly right. There's no problem. Exactly right. So I guess we don't have to get into the settled expectations. Don't have to get into the settled expectations. And you would actually have to go against this Court's existing case law to find it ambiguous now, because the Court has already decided that. I think that's the Aragon-Ayon case, which echoes what the Court said in St. Cyr. Do you think it's the what case? I think that's Aragon-Ayon. Do you have that cited in your brief? I do. It was in your brief? It's in our brief. And the only other thing that I wanted to flag, this is only if we do get into settled expectations, but this is a California conviction. And just in preparing for this argument, I went ahead and looked at the statute, which was what the courts were required to state to California prisoners who were pleading guilty at the time. And the California statute actually does contain a reference to naturalization. This is the California Penal Code 101-6.5, which is still in effect today and was in effect at the time he pleaded guilty. If you are not a citizen, you are hereby advised that the conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. So he heard that admonishment. I agree that What were you reading from? That's from the California Penal Code advisement, and it's 101-6.5. And it is in the briefs. That's generally what somebody is supposed to hear. That's generally what somebody hears when they're taking a guilty plea. Do you know that this person read that section or told that? We're going to assume regularity of practice, and there's no reason to think that he didn't hear that in this case. What he didn't know at the time, of course, was that his crime would go on to become an aggravated felony. He knew the aggravated felony bar was in place. He didn't know he was under that bar. That is what changed. But as our argument goes, there's no retroactivity problem there. But in terms of overall fairness, that he heard that admonishment means that it could be assumed that he was fairly advised that there are broad-reaching immigration consequences to a guilty plea. Well, of course, the other side says in its gray brief that you're mixing the proverbial appellees and oranges. The issue here is not whether a respondent was properly placed in removal proceedings, but rather the scope of relief granted in removal proceedings. And so they try to skirt Arago and Ayon. Do you have any reaction to that? Well, there's no dispute that he got relief from removal proceedings, so that is settled. The question is, now does he get to go on to apply for the privilege of naturalization? St. Cyr made it clear that the aliens still retained procedural rights, including relief, which existed at the time of the plea. Right. And there again, the line is very bright between relief from removal and the privilege of naturalization. Can he ever become a citizen? No. No, he can't. So he has to stay in the United States in this sort of suspended state of criminal detention? He's not in a suspended state. He's a green card holder, and he has relief from removal. So as far as it goes, you know, he's not nearly as bad off as a lot of the aliens that come before this Court. You know, this is the way the law is shaken out, but this is a statutory bar, and it will apply for his lifetime. If the Court has any further questions. It appears not. Rebuttal. Regarding the 1016.5, that was not argued below, and that provides a general admonition. We've all agreed that all criminal convictions can have bearing on naturalization. There is also law on the Federal level, the Padilla case, and the State has its own cases, Resendez and Soriano, that say that admonition given by the State court judges is not sufficient. An attorney must give more specific, detailed advice. There's questions about whether Padilla is retroactive. There's not much question about the California State law, because Soriano was passed in 1987. That required the specific admonitions. Now, regarding the Aragonayan case, counsel is correct. There's not a disagreement that the definition can be retroactive, and that can trigger removal proceedings. The question is the scope of relief. And the issue is not whether someone is guaranteed naturalization, whether they have it as a right because they get 212C. Put it most narrowly. It's if someone pled to a crime before it was an aggravated felony and before there was any promulgation, any statement as to whether 212C would overcome such a bar, does that individual at least have the right to have their application considered on the merits? That's the question before the Court. It's admittedly a very narrow group of people, because it would only, if we took it most narrowly, we could say, well, perhaps after 1993, people would have been put on alert, presuming that lawyers read these things, which they should have. They would know that the government was now going to challenge whether 212C protected you against that law. After 1993, you mean Chan v. Gettner? No, because in 1993, there was a statement issued by the ---- I'm trying to be, you know, taking the cases as favorably as possible to the government side, that in 1993, there would have been some notice, but not in 1991. And that's all that I have to say unless there's other questions. All right. Thank you. Thank you to both counsel. Thank you. The case, as argued, is submitted for decision by the Court.
judges: Block, Trott, Rawlinson